Thank you, Your Honors, and may it please the Court, Paul Clement for Cirba Inc., and I'm going to endeavor to reserve three minutes for rebuttal. Inc.'s constitutional standing is clear and indisputable. As the entity actually practicing the patents and directly competing with VMware, Inc.'s injury in fact is indisputable. Indeed, the District Court ordered a new trial because it thought the jury had heard too much about Inc.'s distinct injuries. In a post-lexmark world, that conclusion is utterly incompatible with the Court's finding that Inc. lacked constitutional standing. Can I ask, I have a number of questions, but can I just start with the aspect of Supreme Sometimes in passing in a way that doesn't make the decision that the Court is making turn on that, but at least once last year not, that it's not in dicta, namely the refusal to allow Texas and other states to file their election law challenge in December. Which in one sentence says, the motion to leave to file is denied for lack of standing under Article III of the Constitution. Texas has not demonstrated a judicially cognizable interest in the manner in which another state conducts its elections. That's the entirety of the analysis. But it doesn't say no injury in fact. It says judicial cognizability, which suggests there's some life in that motion. I'd like you to explain what that life is. Well, a couple of things, Your Honor. First, that would be, I think, a difficult opinion to divine too much from. But second, with that preface, I would say that judicial cognizability I don't think has disappeared. And I think it might still have some legs as a doctrine of prudential standing or in the context of that Texas case. I suppose there almost might have been a political question doctrine flavored to that. So I think in that case, I'm not that surprised that the court might have whipped out a reference to judicial cognizability. But I don't think that you, and I mean, I think it was Justice Ginsburg in the contract against Ryan, maybe, who said, jurisdiction is a term of many meanings, maybe too many meanings. And we've sometimes been loose about how we refer to it. And I think I wouldn't be surprised if you can point me to another reference in a case to cognizable injury. But I don't think there is a post-lexmark Supreme Court decision where they point to cognizable injury as a component of the poor Article III injury and then fault a party for it. I thought some of the references like in the Affordable Care Act case, California against Texas, and also TransUnion do recite legally protected or judicially cognizable or legally cognizable. I sort of understand those three things as being the same. And as something additional to injury, in fact, caused by the bad conduct. I don't think they are saying that with the conscious idea that by saying that, something turns on you. And I think TransUnion is a perfect example. I mean, the whole point of that case, as Your Honor no doubt knows, was to point out that a statutory injury, legally cognizable, I think is what you'd often talk about when you have a statutory injury like that. So they had legal cognizability out in large measure. But the problem was they didn't have injury in fact. And so I can't imagine that Justice Kavanaugh in writing that opinion, whatever loose language he might have used, meant to say that the injury in fact requirement is something more than injury in fact. And that there is a subset. But I guess I have understood your position to be that there is nothing to the Article 3 test is beyond satisfying injury in fact causation and redressability. And since Inc. has all of that, constitutional standing exists and everything else is in wait. Do I understand? I think that's a fair summary of our position. And I think that's a fair summary of where the court is, both this court and the Supreme Court, whenever it focuses on it. I think when the court's not focused like a laser beam on the issue, it reverts to, I mean, I recently read a dissent from one of the members of this court that used a whole bunch of pre-Lexmark, pre-Lone Star, pre-Schwendemann language about standing. But I don't think much turned on it. And so I don't think, I mean, and that's part of why I think mandamus is so important here is because with respect, for decades this court had conflated the Article 3 requirements and the statutory prerequisites of 281. And so it's not surprising that district courts continue to conflate them. I don't even think it's an accident that it's the judges who maybe had the most experience with patent cases under the ancient regime who are the ones that are maybe most likely to continue making the mistake. But it is a mistake. Counsel, you mentioned TransUnion. In that case, I noticed that the court talked about this, there's some language in there that was interesting, talking about any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts. And I was thinking about that language traditionally recognized as providing the basis. But if your harm is competition, then how is that a traditionally recognized basis for a lawsuit? Let me try and explain further. So if you have exclusionary rights, then there's competition. Because someone is using your exclusionary rights, that seems to be a harm traditionally recognized as providing a basis. On the other hand, a harm that comes from not having exclusionary rights, but someone is competing with you nonetheless, is not usually something that's kind of injury that would traditionally be recognized. I just wanted to get your thoughts on that. Sure. And I think I would just disagree with you. I think if you broaden the lens outside the patent context, competitive harm is one of the classic Article III injuries, like losing part of a black acre or something. If this were an antitrust suit, and VMware were a monopolist, and we sued them for monopolistic behavior, and part of the monopolistic behavior was infringing patents, it would be our loss of competition that would be the basis for Article III standing. It wouldn't matter whether it was an exclusive license. If we were bringing a common law action in federal court on diversity, then we would still need to have Article III injury. If we were bringing an unfair competition action. I mean, as the name of the tort suggests, the classic Article III injury in that context is a loss of injury. Monetary injury, of course, is another sort of classic Article III injury, which we have certainly suffered. It's so classic that, of course, the whole doctrine of when equity jurisdiction takes over is when you don't have an adequate remedy of law, and simply monetary damages, monetary injury, is a classic legal injury. What about, just hypothetically, if there was a third party, and it had an acceptable non-infringing alternative that it made, and could it sue for patent infringement where VMware was no longer practicing the patent, but it would have an economic benefit if VMware was not able to practice the patent because it sells an acceptable non-infringing alternative, and it's harmed by the competition from VMware? So, I think you asked Your Honor would they have standing to bring a patent action. Under, for service patent. They don't own service patent. Right. But the reason I want to restate the question. I just am asking because your view of injury is very broad. And so, I'm just testing it. Right. And under your view of injury, I'm wondering whether someone who creates an acceptable non-infringing alternative and competes with both CERBA and VMware would have standing, or at least be injured. So, if I'm understanding the hypo right, I think the answer is yes. The reason I wanted to, sort of, because even the way you formulated the question, I think actually encompasses both Article III standing and maybe a statutory question. And on the statutory question, it might be a loser. But you said, do they have standing to bring a patent case? And with all due respect, I don't even think that's the right question. The question is, do they have Article III injury? And the answer is yes. On the merits. They have Article III injury as a result of, just to make sure I'm being very clear, as a result of VMware using CERBA's patent. Sure. Okay. I mean, and maybe that seems odd to you. And I think if it seems odd to you, it's only because of one of two things. One is, that claim would be a loser on the merits based on the fact that they're suing on the wrong patent or there's no infringement or whatever the basis is for that to be a dead-bang loser on the merits as a statutory matter. That may make it seem counterintuitive to you. Or it could be just because there's, like, three or four decades of these cases that conflate the two. But with all respect, I think, you know, it's standing, Article III standing, it's trans-substantive. So even to say, well, is there Article III standing to bring a patent claim is, with all due respect, not right. It's just the question, is there Article III standing? And if there is, we can talk about all the statutory prerequisites and we can bring B6 motions and we can deal with issues of waiver and the like under B6 but not B1. I understand. Your point is that all of that is taking care of the statutory or prudential standing. Absolutely. Absolutely. What about the fact that Doug Stark three times said that he did not think that VMware had waived its argument regarding prudential standing? So, I mean, we disagree with him on that. And I think if you look, for example, at a place I ask you to look is Appendix page 370 where the legal authority for VMware's argument about standing is presented. There's a reference to B1, not B6. There's a reference to subject matter jurisdiction, not failure to state a claim. And there are three separate references on that one page to constitutional standing. One reference to prudential standing and it never sort of sees the light of day again. And, of course, Judge Stark is emphatic that he's ruling on constitutional standing. But I do want to be equally emphatic that it really doesn't matter. I mean, at this juncture, because we were poured out of court and dismissed as a party to this lawsuit because we lacked Article 3 injury. That's his holding in his order dismissing us as a party. Now, that's just wrong. And it's mandamus-ably wrong. On the assumption, which I know you disagree with, you just said you disagree with, that any kind of lack of statutory right to be a plaintiff here was preserved. Why should we not affirm on the ground that you didn't belong as a statutory matter for exactly the reasons that Judge Stark relied on, that he relied on but under the constitutional label at least initially? What practical difference is there? Don't worry about the question. Okay. I have two responses. One is it shows you the practical difference, but the other is, of course, we think that we have an exclusive license because that's what Section 2 of the licensing agreement says. Assume that away. Okay. Then assume that away, which, of course, I hate to do, but assume that away. It still makes a world of difference because if we have a statutory prerequisite problem but not an Article 3 problem, we're still a party to the case. We can fix the standing problem. We can fix the standing problem by retroactively reforming the contract to reflect the party's intent. We can do that. We can then seek a preliminary injunction before this retrial happens in 2023, and we can get ourselves back in the case. So there's a huge difference between statutory standing and Article 3 standing, and I think – I don't think any of this turns on policy arguments, but I do think getting this right and making clear that this is – if there's any problem here, it's a statutory problem and not an Article 3 problem. It has a huge policy benefit, which is it makes some of these defects in licensing agreements and the like, it makes them fixable. If they're statutory, they're fixable. That's the lesson of Schwendemann. The problem there was fixable because it was only statutory. Judge Reyna in dissent said, no, it's Article 3, so it's not fixable. And with all due respect, as a generalist who doesn't understand all of the subtleties of some of these exclusive license things, I mean I read this license and I think, wow, it grants an exclusive license. Game over. Unless the standard for having the statutory right to suit is not properly described as having an exclusive license, but rather having an exclusionary right, namely a right to exclude others by going after those others. And then the question would be whether the you don't have any proprietary rights portion takes away what would otherwise be a corollary of exclusive license by itself. That's what I took to be Judge Stark's view of this license. Sure, and I find that baffling. I mean I'm just a humble generalist. I find that conclusion baffling because Section 2 gives ink an exclusive transferable license, worldwide license. Sure, but it's transferable. That's granting a patent right. That's a clear, but I digress. Title 35 in the patent section doesn't give anybody the right to practice anything. It gives them only a right to exclude others. That's what 154 says. So the fact that you have a right to practice and you're the only one and you have a promise that you will be the only one does not automatically mean it's a 154 right. There's been a longstanding sort of moral base implication that in the absence of anything else, it carries the right to go and exclude others. But this provision, this no proprietary rights provision, I understand Judge Stark to have said, that essentially wipes out the presumptive implication that one thing means the other. So two points, Your Honor. One is, I'll grant you all that, but again, as a generalist, the first principle of contract interpretation, the first principle of constitutional interpretation, it says it in Marbury, is you don't interpret one provision of a document to render another provision notatory. So I don't think that there's any problem with Section 8 and Section 2 coexisting and ink having an exclusive transferable license, which is after all what it says. And it seems if it's both exclusive and it's transferable, so I can essentially control whether I exclude somebody else by transferring them the license, where that seems like more than enough to give you exclusionary rights. But if I'm wrong about that, and maybe I am, it seems like especially in a parent subrelationship where that is clearly what they intended, the ability to fix it after the fact when it's pointed out as opposed to have a whole lawsuit after eight citizens of Delaware have wasted their time in a trial and there's a $236 million verdict to at that point sort of say, ah, you should have – if you had only started Section 2 with notwithstanding anything in Section 8, then there'd be no problem at all. It seems to me – my only point here was that treating these things as statutory means they're fixable. So was there any attempt to fix it? I understand maybe not because it was found to be a constitutional problem, but was there any proper suggestion that it would be fixed? We have taken the trouble to figure out how we would fix it, and I'm happy to proffer to you right now that we'll fix it today. We'll fix it tomorrow if it's statutory. But we've been poured out of court for Article 3 injury, so because of that there's no ability to fix it and there's no point in fixing it. But we'd be happy to do it. I think a notwithstanding clause would do the trick myself. I don't even think we need that because, boy, I think an exclusive transferable worldwide license ought to convey exclusionary rights, particularly when it's granted by a subsidiary. I mean if you take a step back, the context of this is it all part of – Can I just put it in a specific language? I understand what you're saying, and if we were just talking about languages that said exclusive transferable worldwide license, your argument would have a lot of force, I think, even with Clause 8. But the remainder of that sentence is to use the products, which suggests to me that it is a use license or a more limited license to use the products but not necessarily have any rights in the patents. So, I mean that seems to me to be the plain reading of Section 2 and Section 8 together, is Inc. gets to use the patents but the other company owns the patents. Now I understand your argument is even if that's true, you want to fix it. But doesn't that seem to be – I mean that is the way I would read this license. To me, that gives you statutory problems here. Again, I would – if it turns on that subtlety, again, I think transfer the right to use is a right to grant patent rights to other people. To use. To use, but that's one of the patent rights. No, no, no, it isn't. The patent statute does not give anybody a right to use anything. The patent statute gives only a right to exclude others from using it. Right, but if I have the exclusive worldwide right and it's transferable, I get to decide who's excluded and who's not. If I give you a transfer of this license, you can practice the patent. If I don't – You don't get to decide – if you don't want somebody else to practice, you don't get to decide whether they're excluded. The patent owner does. You can decline to enable them to – but you don't get to exclude them just because you have an exclusive license. I would understand that we would both get, because of this license, to forgive their infringement, which is part of an exclusionary right, and also what this court said in Lone Star is the other thing that gives you an exclusionary right is a right to essentially grant the ability to exercise the patent, which if it's transferable, it seems like it gives it to it. And that's my reading of the patent. I mean that's my reading of the license. But in a sense, this colloquy makes my point, which is if it's this complicated, isn't it a better world where it's fixable? So that if you point this out because you preserve it in 12b-6 and somebody – especially in a parent-sub context where it's just incredibly easy to fix it. So somebody points it out. Is it incredibly easy to fix it without destroying whatever the tax or other benefits are of the reason that led to this kind of transfer into the sub? I am informed that the answer is yes. It's incredibly easy to fix this without undermining the tax consequences of this at all. And do you – what do you understand from Schwendeman are necessary preconditions for a retroactive fix by way of – was Schwendeman like a contract reformation case? Yeah, it's contract reformation under Minnesota law and under Minnesota law – And here – do I understand here this license is governed by Canadian Ontario law? That's right. But nobody's made anything of any specific – Nobody's made anything that turns on that. As a substantive matter, are there any preconditions for a retroactive fix under the reformation law? Not that I am aware of. And again, presumably if you underscore that this is statutory, underscore that statutory defects are fixable, at least potentially if the law allows, then we would fix it. And I'm sure my friends at VMware, if there's an argument made under Ontario law that it's not fixed or it's not retroactive enough, I'm sure they would be happy to make that argument. So we could have all that. But right now we can't because we have – we've been dismissed as a party to the litigation in CAS based on what seems to me to be a clear and indisputable error of what's required by Article 3. In your briefing, you rely on Lone Star and Schwendemann and Lexmark. Do you have any other cases that support your view that there could be constitutional standing without exclusionary rights in other intellectual property areas? Well, I mean there are other cases under the – I mean obviously Lexmark is a trademark case. There have been – the Supreme Court since then has decided that the registration requirement under the Copyright Act is merely statutory. It's not jurisdictional. So – but I think if you look at this from a generalist perspective as opposed to a patent-specific perspective, there are tons of cases. I mean injury to a competitor, loss of market share, forced firing of your employees because you're having competitive disadvantages, all of that is the classic injury in fact. And so I think the only way that you could say that doesn't count here is by basically saying there's a special rule for Article 3 injury in fact in patent cases or intellectual property cases. And with all due respect, that's kind of the opposite of the thrust of Lexmark and Schwendemann and Lone Star. And I mean there's a broader obviously – so the Supreme Court case sort of suggests that when it comes to something like Article 3, you don't have special patent rules. Article 3 is Article 3 is Article 3. So for a non-practicing entity, I would understand that their only injury could be their loss of their exclusive rights. It would be a different analysis, and you can have different kinds of injury for different parties. Yeah, absolutely, absolutely. But if I could – I mean I know I'm over time here so I don't want to overstep. Begin to wrap up. Yeah, but I'll begin to wrap up by finishing my answer to your question by saying as sort of another kind of policy argument for this result being sensible, I mean what Judge Stark envisions in the retrial is that IP will be a party. And he even said at one point as a non-practicing entity, and you won't have the only entity that practices the patent and experiences the flesh and blood injuries in the case under his worldview. And that seems to be – especially if – and of course if there's a problem with the licensing agreement, we can fix it if it's statutory. But that seems like an odd result. And it seems to me like whatever is the case of a situation where you have a bare licensee and 1,000 people are licensed under the patent, when you have parent-subsidiary relationship, that you have the sole licensee, they are the only party practicing the patent, I mean it's a bit odd to have a case without that party present. And if treating this as statutory allows you to make sure that that happens and doesn't not happen because of some defect in the way the licensing agreement was written, that seems to me to be an affirmative virtue of our position. That's it. The rest of my remarks. Thank you. Can we start to even it out? Thank you. May it please the court, Deanne Maynard for VMware. I'm going to address the reasons the rule that CERBA 8 seeks is wrong, but mandamus should be denied here for three independent reasons in any event. First, they seek a new rule, a change in the law, not enforcement of a clear and indisputable right. Second, they forfeited the very question they present to this court, as Judge Stark found. And third, the answer to the question would not change Inc's dismissal because Judge Stark found that VMware timely objected to Inc's fair licensee status, regardless of the label of the challenge. Just on that last point, if Mr. Clement is right that his client could fix the problem, if it's a statutory problem, and indeed fix it retroactively, although I'm not sure his argument depends on this, then his client might be able to come back into the case. Wouldn't that be a consequence? So it's too late for Inc to argue that they can fix this vis-a-vis the trial that's already happened, Your Honor. We put at issue whether or not Inc had an exclusive license in the pretrial order, as Judge Stark recognized. And they came back and said, there are no facts to be tried about that. And they asked Judge Stark to put it off and decide it after the trial. And significantly, they agreed with us that if they were just a bare licensee, they would lack standing to sue. So they knew, and whether they thought it was constitutional or statutory, they knew that they had to prove that they were more than a bare licensee to prove their claim. And they chose two sophisticated entities to rest on the agreements and push the issue to after trial. Counsel, it's your position that they would have had to have said, if there is no prudential standing here, we will agree that we cannot fix this agreement. That we will not even try to submit a new agreement or try to fix it. That's what you're saying. You're saying that they agreed that if the court found no statutory standing, that they would not take the time to fix their agreement. It seems like a little bit of a stretch, to be honest, with respect to just what they said, which was that we think it's not a bare license. I think I'm making two points, Judge Stahl. So one is that we joined issue on this question before the trial on whether or not they had an exclusive license or not. And they said three things about that. One, please decide it after the trial. Two, there are no facts to be tried. That's at A363 and A364. And then four, they agreed that a bare licensee would lack standing. That's at A368. And so they have the burden to prove their infringement claim. And so whether it's a constitutional question, their licensing standing, or whether it's a prudential statutory standing question, they had the burden to prove it. And they affirmatively waived any opportunity to prove it on the facts which reformation would require. And contrast this to Schwindemann. Okay. So what are the facts relevant to justifying a Schwindemann-like reformation? Well, so in Schwindemann, as soon as her standing was challenged, she came in and said, I can reform it under Minnesota law. There's just a clerical error. I have legal title all along, and there's a clerical error in the right. That was her argument. This is quite important to me, so I don't want to go over this too quickly. Does the reformation standard require that something like a clerical error as opposed to, of course, we meant to do what this contract said, but boy, we didn't know the consequences. We really want a different contract than the one that fairly interpreted we currently have. And we're now going to create that different one retroactively, because now that we understand the consequences, we clearly would have done the new one. So in Schwindemann, this court addressed it under the state law that governed there, Minnesota law. This issue has never been – they've never explained how they could fix it here. This issue is like – it's like triple forfeited, Judge Toronto. So they needed to raise it when we challenged their bare licensee status. If they wanted to prove something about their licensee status that went outside the documents or somehow fixed the documents, then they needed to do that at the trial. So why is it a forfeiture of the opportunity to correct a consequence of an interpretation when all you – when you limit yourself to saying this is actually an incorrect interpretation that's being proposed, and we think that the right interpretation allows us to be here without change? Why is it – why doesn't the reformation possibility only ripen later in a way that would have to be raised? Well, so they never advanced it even in the district court after Judge Stark dismissed them. So they noted it in a footnote, but they never explained how they could fix it. He's asserted here that he's going to offer to this court on the extraordinary writ of mandamus how he can fix it under Canadian law. We've never heard that. And so this is not the form to do it. Whatever they might be able to do when they go back going forward, that's another issue. But nothing would undo their failure to prove it at this trial or the fact that Inc. stands dismissed. And we would argue and have arguments that it's law of the case that Inc. is dismissed. They had their chance to prove that they had more than an exclusive license. They didn't do it, and it's too late for them to come in with these new theories now about fixing it. But in any event, whatever these hypothetical arguments might be that they have, that would be an issue for Judge Stark going forward. But it's not going to undo the dismissal that's already happened. Let me just try to – I think I stepped on your answer to my own question. What are the prerequisites for a reformation, let's assume under general contract reformation law? You referred to clerical error, which at least when I hear it means, without exploring it, something much rarer than we understand now what this contract meant. It wasn't a transcribing error or something like that. It was we didn't appreciate the consequences and we want to redo them. Does reformation cover that second possibility, which I have not stated with precision, but maybe. So I think this would present a question of Canadian law, maybe Ontario law. I don't purport to be an expert. I will tell you that in Schwindemann what happened under Minnesota law was held to be okay was that the documents had basically a clerical error by the lawyer that filed the patent assignment. And what the district court found and this court affirmed was that the party's intent all along had been to file a different assignment attached to that and the wrong number was on it, but there was evidence that it was thing. So under Minnesota law, again, that was tried at the trial after standing was challenged before the trial or I guess it was in summary judgment proceedings, but she proved it on the facts when it was first challenged. And it's too late for them to do that here. We would argue that what they're trying to do here is effectively rewrite the agreement. The agreement- But putting aside the triple forfeiture, why wouldn't the question whether what they proposed to do if they now try to do it effectuates properly a retrospective cure be one for the district court to address? Well, I mean, we can fight about this all with the district court. It wouldn't be grounds to grant the extraordinary writ of mandamus where there's, you know, the district court has done nothing but decide the arguments presented to him. They should have made these arguments in response. And so they did drop a footnote in their response to the judge's supplemental briefing request. And Judge Stark said they have waived arguments they didn't make. They should have forfeited arguments. Forfeited arguments they didn't make. They should have raised these arguments. There was no good reason for them not to have made all these arguments. Do you remember where the footnote is, what appendix page? Um... A325 footnote 3. Okay. And what specifically is that referring to? A 281 statutory issue was not timely raised. Is that SRBA's issue or your issue? So this is, I'm sorry, this is SRBA's brief in response to the judge's dismissal order. And what they're saying is this isn't a constitutional issue. It's a statutory issue. And VMware didn't timely object. And if they had, we would, you know, we could, we would have put in these issues. And Judge Stark has already, like... And this is what Judge Stark is also referring to when in the transcript on the request to certify, he said, one reason I don't think I'm going to certify is that I don't think the Federal Circuit could get to the question whether the Constitution permits standing even without exclusionary rights because SRBA didn't timely make that argument in me, or is this something different? In the new trial order, the first place he says in the new trial order is when he denies our motion for reconsideration. He basically says all of the arguments you're making now, you should have made to me sooner, and they are waived. And that was his independent first ground. So it wasn't like I'm not going to look at Schwindemann, I'm not going to look at precedent. It was like you didn't make any of these arguments to me. And then at A515, he explains that in great detail. But I want to understand what the any of these arguments is. If any of the arguments is that he was saying SRBA didn't make is limited to the argument that I can get by on Article 3 standing even if I don't have exclusionary rights. That's one thing. But did it have anything to do with if this is statutory, I can fix it? Well, so what I would say is, I mean, what he says in the language is they waived, they forfeited, or he says waived, but forfeited the arguments. We keep going back and forth. Forfeited the arguments based on Schwindemann. But the argument based on Schwindemann was, say, the first argument was this is not a bare license. Then Schwindemann was argued for the purpose of saying, even if it is a bare license, you don't have to have exclusive rights or exclusionary rights in order to have constitutional standing. That's what I understood the reliance on Schwindemann to be. Not necessarily making a reformation or argument that we could also engage in reformation like Schwindemann, right? So two points about that. And I think that the footnote that in this point – this is A324 to 325 is their supplemental brief after the dismissal. And it's in the section called VMware forfeited the 281 issue. And Judge Stark says – for pages he explains this at 516 to 518, why we were timely raised regardless of whether it's properly labeled a constitutional issue or a statutory issue. And I think that's right. My point is, Judge Duranto, that we said before the trial, you are only a bare licensee. You lack an exclusive license. They said, we have an exclusive license, and they chose to rely only on the language of the agreements. And that's where, if they had an alternative ground to defend their ability to bring the suit, because they agreed at that time before the trial that if they only had a bare license, they didn't have a patent claim. Could not sue for patent infringement. They had to bring it at the trial, and it's now too late to do that. What they might be able to do when we go back and go forward, that raises a whole host of complicated questions that parties haven't argued. But he shouldn't be able to come here and get the extraordinary writ of mandamus when Judge Stark decided the questions presented to him. We debated these issues in the trial court about who forfeited what and who was timely. At least for me, it was a little hard to follow. I mean, not your presentation here, but the sequence of exactly who was accusing whom of forfeiting what. I think both sides. Do you think Judge Stark ruled that, given his understanding of the license agreement, section 2 and section 8, assuming that ink would lack statutory standing? Or did Judge Stark, at the end of the day, throughout the proceedings, no, I'm not going to say this. But did he ever rule on the statutory question? Initially, obviously, in a footnote in his jury ruling, he said, I'm only doing constitutional. Did he ever say, actually, my conclusion stands on the basis of the statute, and if so, where? Footnote for A57 to 58. That's where Judge Stark goes through, responds to the arguments I was just pointing you to by CERBA, that VMware did not timely raise it. And he gives two reasons for why we timely raised it. He says, first, it's constitutional, and it can be raised at any time. And I do believe he's right that it's constitutional. But he says, in any event, given how quickly this case was litigated, we timely made an objection to their standing. Just to follow up on Judge Taranto's question, I agree that he very clearly says that it was raised timely. But I don't see where he actually says, and not only that, but there is no statutory standing here. He doesn't say that. Well, so two points. They've never contested that they don't have statutory standing if they are a bare licensee. But I think that the implication, Judge Stoll, is the sentence, this is hung on, this footnote, and then the very next sentence. So the judge says – this is at the end of the discussion where the judge says, VMware was prejudiced at the trial, and the outcome would have – high probability the outcome would have been different if I had dismissed Inc. before the trial. CERBA says it's untimely, but it's not because it's constitutional. In any event, it's timely. Based on these conclusions, I grant a new trial. So he was saying, even if it's just a statutory standing, it's timely. Inc. shouldn't have been in this case. It prejudiced at VMware. I'm granting a new trial. Okay. Can I ask you a different question? I just want to know, you had a lot of different discussions and reasons why we shouldn't grant the written or brief, and you spent a little bit of time explaining why it was your view that constitutional standing requires not just an injury, but a legally and judicially cognizable injury. I wanted to ask you, do you think the lack of exclusionary rights has any impact on the analysis of causation or redressability? So I think – yes, I do. I mean I think it would also fail causation or redressability. So the patent rights, as Your Honors were discussing with Mr. Clement, the right that the patent rights give is the right to exclude others. It's a limited right that's an exception to the background of market competition. As this court has rightly held for decades, you have to possess some of the exclusionary rights to sue for patent infringement. And we have gotten backed up too far, and I think I've forgotten your question. I really just wanted to know if you were relying on causation. Well, I think you can frame it either way. So I think you can also say – and this court has sometimes looked at these kinds of issues as redressability issues, but I think that most often this court has talked about it as Article III injury in fact. And to Judge Toronto's question, and in response to your colloquy with Mr. Clement, the Supreme Court has made clear since Lexmark that the possession of invasion of a legally protected right is part of the Article III injury in fact. And I would point the court to Justice Chief – I would say that I agree with Mr. Clement that some of our older cases probably are incorrectly phrased in view of Lexmark. So that's why I want to just know what your thoughts are on – specifically, are there Supreme Court cases that we should be looking at on redressability and causation that might help us if we decide – if we agree with Mr. Clement on injury, for example. I just want to make sure – I would like to know if you have specific cases or anything. I can't stand here and give you cases on redressability, but I would like to fight the premise of your question, which is – so in Gilby-Whitford, the Chief Justice explains that Article III's injury in fact requirement requires invasion of a legally protected interest, which is concrete and particularized. In cases – some cases are focused on different pieces of that, but in Gilby-Whitford, the failing of the plaintiffs there was that they didn't have invasion of a legally protected interest. Also, in House of Delegates – Can you remind me, what was the interest asserted and why was it not legally protected? Gilby-Whitford was the packing-cracking redistricting case, Your Honor. Got it. And so the individuals had to show that their districts were individually impacted and they didn't prove that. And so they failed to show that they had a legally cognizable right. I would also point the court to Virginia House of Delegates where the court held that the failing there was – the failure – this is also post-legmark – to show a legally cognizable injury. And that was the holding of the court. It was based on that prong of the Article III injury in fact test. And the Chief Justice in Gilby-Whitford explains why this is part of the Article III case in controversy requirement, that invasion of a legally protected interest, which is concrete and particularized, is necessary to limit judges to the appropriate role of deciding based on legal principles, claims of legal right. And a pecuniary, private pecuniary interest is not enough to give you Article III injury in fact. Justice Scalia, who also wrote Lexmark, wrote Vermont Natural Agency Resource – Natural Agency, Agency, Natural Resource? May I have it backwards? The U.S. Exeral Stevens, and he explained that a plaintiff who, for example, had placed a wager on a lawsuit, the outcome of a lawsuit, would have a private economic interest in the outcome of that lawsuit but would nevertheless not have an Article III injury in fact because the economic – private economic interest that you have has to be tied to the legal claim that you're asserting. And here it's always the – this is – we're not mixing and matching 281. We're not talking about the statutory firearms. We're talking about a level back from that, which is that the patent only gives a limited right to exclude. It gives a right to exclude others. If you don't possess any of the exclusionary rights, you have no invasion of a legally protected interest when someone infringes it. Mr. Clement mentions Blackacre, but somebody who had like an easement to walk across Blackacre couldn't sue someone else who walked across Blackacre for trespass. This is like suing on somebody else's property right. This court has held for decades, and it's correct, and it's still correct under Supreme Court precedent, that that is not Article III injury in fact. And so Judge Stark was correct to label it a constitutional failing, but it's also a statutory failing because if they lack any rights under the patent, they also can't meet 281, and their claim fails for that reason as well. When – I think Mr. Clement – I think when I asked him the question about why couldn't this be – he affirmed, and I'm using that incorrectly in a mandamus context, but why couldn't we let Judge Stark's rules stand on a statutory basis, even if he was right about the constitutional basis? What I think he focused on, at least what is in my mind, was this disparity in the ability to fix the problem. Can you address that? Is there a disparity or what? I don't think so, Your Honor. In this court's cases like Enzo that talk about the reason somebody can't grant an exclusionary right after the fact, after they've sued, would go beyond just Article III concerns that you can't artificially create possession of the right to sue somebody for infringement after the fact. So whatever they might be able to do going forward, that's a different question. We can fight about that below, but it wouldn't change what you can do here. Although I think if you agree with him about his Article III injury argument, which I do think is wrong, like I think he's mistaken, and we're not seeking a patent-specific rule. We're seeking to apply the rule that applies transubstantially across all claims, which, as the Chief Justice explained in Gill, is Article III injury in fact requires invasion of a legally protected interest. So that turns this phrase, injury in fact, into something that actually looks at the underlying legal right and who is in its protection, which I guess maybe Justice Thomas is pressing these days as a reformation. Well, the court has long said in cases like Worth v. Selden, they've repeated that sense, is that whether you have Article III injury in fact does turn on the nature and source of the claim. So it is something that you do look – because it is – like if you look at Gill, if one looks at House of Delegates and the dissent in Gill, the question is the match. Is there a right match between what you're claiming as your injury – and this is Justice Scalia's point in the Vermont case as well. There has to be – you can't just come in and say I'm harmed by this person's conduct and sue. For it to be a case of controversy, there has to be some tie between some legal invasion to your rights. And under the patent laws, if you don't have any of the rights to exclude, there's no legal invasion of your rights. So the norm is competition. So for someone who lacks any of the exclusionary rights – And what you just said, is that consistent with Schwendeman? Yes. So I think Schwendeman reinforces – so I think Schwendeman follows Lone Star. And Lone Star – back to a question you alluded to, a point you alluded to – I think Lone Star has already aligned this court's precedent with Lone Star – I mean Lexmark, I'm sorry. Lone Star said exclusionary rights remains Article III. That remains the constitutional minima. What we used to call credential standing, which is can somebody join even though they don't have all of the exclusionary rights, they just have some, do they need to join the patentee to their case, that part under Lexmark is more appropriately considered statutory standing or whatever one wants to label the non-Article III requirements. With all due respect, I don't see where Lone Star says that you have to have exclusionary rights for constitutional standing. I think it says in that case the party had exclusionary rights, so they had constitutional standing. But I didn't think it was saying this is the minimum that you must have in order to have constitutional standing. I just – I don't think that question has been answered post-Lone Star. Post-Lexmark, you mean? Yes. So I would point you, Judge Stoll, to – so the court in Lone Star goes through the Article III standing section at 1234 in Section B. And then once it goes through and it discusses at length this court's cases in Morrow and WIAB, which I think have really thoughtful discussions on why exclusionary rights are required in order to have Article III standing. And I think those cases clearly are talking about what's required because if you don't have any – because they're talking about – and the same with ortho. Like if you don't possess any of the bundle of sticks that allows you to exclude, you don't have any invasion of illegally protected interest if somebody infringes. So after going through and discussing Article III standing in Morrow and WIAB, this court in Lone Star doesn't purport to say, okay, we now reframe all of that as statutory standing after Lexmark. Instead, on the top of page 1235 in the first full paragraph, the court says, although Lone Star cleared this constitutional threshold – and I think the this constitutional threshold is the possession of exclusionary rights. And then it goes on to discuss so – but because they have some, they shouldn't be dismissed for Article III standing. Let's decide whether we have to bring in the patent team. And then under Lexmark, all of that law is now statutory. Okay, and now Schwindemann. And now there's Schwindemann, and Schwindemann says we're following Lone Star. And it says that – it recounts Lone Star. It says that this patent – this first plaintiff alleges she has ownership rights. And then once it – it goes through this discussion. I think most of the discussion is about 261, and the debate between the dissent and the majority is about 261, which the writing requirement is clearly a statutory requirement. That isn't – so I – but I think in the end, the question of whether she was a patentee folded together with the question of whether she had exclusionary rights because she either had all of them, and therefore she had exclusionary rights and cleared Article III, and she was a patentee, or she had none of them, and she wasn't – she wasn't either. So – but I – but Schwindemann won't get CERBA what they need. If that was a constitutional requirement, if Schwindemann kind of kept what you said, what in your view Lone Star confirmed namely possession of some – at least some exclusionary rights is a constitutional, then how does retroactive reformation work with a rule that constitutional standing must be possessed at the time of the filing of the court entry document? Well, what the court held was – what this court held was that she was the legal owner of the patents when she filed suit as a matter of Minnesota law, that she had been assigned the patents in 2002 and that – before she filed suit, and that it – that the writing requirement could be fixed after, and the writing requirement is clearly statutory. So – but what – but I think the main takeaway, Judge Toronto, is that Schwindemann can't get CERBA a clear and indisputable right to relief here and to a holding what they want, which is that – because it clearly doesn't hold that a party with no exclusionary rights has Article III standing, and that's what Judge Stark has held here. On the kind of standards which, as you know, are flexible for – somewhat widespread difficulty, which has happened before, we try, if we can, to clear up the legal analysis, even if what we're doing is, almost by definition, clearing up something that maybe wasn't so clear. Why should this not be one of those cases? I don't think this fits, like, the cases, like, you know, Micron and Google, where this court has done it before for several different reasons. One, there's nothing like the widespread disagreement that there was in those cases before this court decided. Isn't there, you know, substantial disagreement about this problem of fixing and retrospective fixing and whether it can be done at all, which I think at least some courts think, if it's a constitutional problem, it simply can't. Or do you think that maybe retroactive fixing, at least if the standards are what Schwendeman relied on, could retrospectively fix a constitutional problem? That's certainly not the divide that they have alleged in their petition, so I'm unaware of any such split, Your Honor. This isn't a case like T.C. Heartland, post-T.C. Heartland, where the Supreme Court has reversed one of this court's precedents, and there's clear divide, like, straight across the board. There's only a handful of cases they cite. Don't they have a paragraph where there's, I think, it's not like 25 cases or something in Micron, but don't they cite six or seven or something? Well, they cite cases, Your Honor, but I don't think those cases show any kind of clear divide on the question that they're trying to present to this court. So, but in any event, even if the court wanted to clear up this question, this is a terrible vehicle to do it because they forfeited the issues they're trying to present here. So any sort of notion that you would clear that up is based on the idea that they should have told Judge Stark, you know, instead of just responding on the terms about their license, they should have told Judge Stark that, you know, all these arguments they're making now, and they didn't, and he held that forfeited. And this court usually wouldn't review such a forfeited question even on a final judgment appeal, and it shouldn't reach out to decide it in this case. So we would request that this court deny the extraordinary relief of mandamus unless the court has further questions. Thank you, Ms. Maynard. Your Honors, I'd like to make a couple of points in rebuttal, but I'm obviously guided by anything that's a continuing source of concern for you. Just to pick up on the last point you made, Judge Toronto, I think it's worth noting in this respect that even Judge Stark in his 1292B motion, although he denied relief, recognized there was a substantial ground for Difference's opinion on this issue, which I think underscores that there is widespread confusion, and this court could helpfully clarify it. Judge Stoll, you asked about causation and redressability, and the reason that's not going to get the other side anywhere is because another point that I think VMware loses sight of is that the standing inquiry is supposed to be independent of the merits. There are dozens of Supreme Court cases that say that standing is independent of the merits. So I suppose you could say, well, even if you have injury in fact, since you don't have a good statutory claim, you're not going to really be able to redress it at the end of the case. But that's not the right way to think about it, and you essentially assume for standing purposes that the statutory claim or the legal theory is okay, and then you just ask, is there injury in fact? Is there causation? Are they complaining about the defendant's conduct? Is that what's causing the injury? And traceability and the rest. So I don't think that there's any problem there with causation or redressability, and I really think that's the key to deciding this case and providing clarity for the lower courts. Article III standing is trans-substantive, so if Ink had standing to bring a common-law unfair competition claim against VMware because it's lost 100 employees and because it's lost market share and it's had to lay people off, if that's Article III injury for a common-law claim, which it certainly is, then it's good enough for a statutory claim, no matter what the statute is. And then the second point to overlay on that, and you don't ask, are they going to win at the end of the case, or is there a statutory problem? You separate out the standing inquiry from the merits inquiry. And if you make that clear, then hopefully the lower courts will get the idea that even asking, is there Article III injury in a patent case? No, no, is there Article III injury? There's three requirements. I think it's revealing, actually, that my friend, who's very learned and knows the Supreme Court case very well, but her example of a case where the court said something about cognizability was the Gill case. The next term they come around and say it's all a political question. I think that shows you that when the court is kind of playing around the margins, what's really a cause of action or political question, maybe they slip in the cognizable word. But when they're dealing with real, old-fashioned common-law injuries, the loss of flesh and blood employees, the loss of market share, competitive injuries, that's just injuring fact. Those are the easy cases. And this should have been an easy case from the perspective of Article III. I want to say a couple of things about forfeiture arguments. First of all, I think it's very unfair to say that my client forfeited its ability to object to statutory standing when they said, let's deal with this after trial, when, if you look at Appendix page 370, it is clear what we were being confronted with was an Article III objection to our standing. That's something we can't fix, and you can raise it at any time, so it's harmless to put it over until after the trial. Statutory issues are different. They have to be raised at trial. So if they had raised a statutory argument before trial, we would have said, let's bring it on, and if we lose on that issue, we can still fix it. Well, what do you mean by have to be raised at trial? If the question is whether under 281 this person is a patentee entitled to sue under the statute, isn't that a does the judge decide that? Or if there are underlying facts, do the underlying facts about what the agreements are and what they mean go to the jury? I think if there was a dispute over the underlying facts that were relevant for the statutory claim, I think that would go to the jury. But either way, it has to be preserved. There's no question. It's a statutory argument. It's a B6 argument. I think it's Rule 12H1 says that those kind of statutory arguments have to be raised at a bare minimum at trial. And that makes sense because if you think about this as a statutory claim, what it really is is a claim that ink and its evidence about damages, the jury shouldn't hear that because ink isn't really the injured party under the statute. That's a great argument to raise before the jury hears the evidence. But if you wait until after the trial, you can't raise it. It's too late. But if it's Article 3, you can raise it after the fact. I think that's why it's really unfair to say that we forfeited our objection to a statutory argument because they never made a statutory argument. But it's also an illustration of why it's important to get this right. Can I ask you about that? I was looking at page A370 and 371 preparing for today. I look and I see that on those pages they talk about standing. Then they say standing is comprised of both constitutional and prudential components. Then they have some law about constitutional standing. Then they say prudential standing requires, among other things, blah, blah, blah. So there's different parts where they refer to both kinds of standing, both constitutional and prudential. I'm wondering, could you point me more specifically on why you think this is only raising constitutional because I'm reading it differently from you right now. If you go to the beginning of 370, they cite B1. They don't cite B6. And then they talk about the court's subject matter jurisdiction. They don't talk about failure to state a claim. And then there's three references to constitutional standing. There are what I take to be some loose references to prudential standing. There's certainly no references to statutory standing or anything of the like. And keep in mind that Judge Stark in footnote 1 of his opinion dismissing us for constitutional standing argument only. So he's reading these things the same way I am. And I think he reiterates that in footnote 4, which you've already discussed. If I could just indulge with the court's indulgence, I do want to talk about the forfeiture issue with respect to whether somehow we forfeited the ability to say that even apart from exclusionary rights, we suffer Article III injury. There's three reasons that's not forfeited. One, you can't forfeit that kind of Article III argument at all. In the Lexmark case... ...the Affordable Care Act forfeiture of an affirmative ground for standing. Do you know what I mean? I'm not sure I do, because as I understand the only thing that happened... There was a severability, a non-severability argument for standing. And the Supreme Court says that's an affirmative basis for standing. You did not present that to us, and so we're going to disregard it and find no standing. So you can forfeit... What I understand the Supreme Court did there is they didn't say it's forfeited in the sense that your failure to preserve it would prevent you from raising it in this court if it were in the question presented. I read the court saying you can't argue that now because it's not in the question presented. And that's a special rule for the Supreme Court, and you can have an argument that's in the case, but if you didn't put it in the question presented, and the Supreme Court doesn't want to reach it that day, they're not going to reach it, and they're going to point to the question presented. Lexmark is the perfect... So the Supreme Court's not going to allow the Fifth Circuit or the District Court in that case to go back and say, oh, you do have standing after all? That can't be. That probably can't be, but that has more to do with the fact that once that decision gets final, 25 days, and nobody files a rehearing petition, the case is over, I would think. But Lexmark is a better example. The Supreme Court went out of its way to say all the parties are talking about this prudential standing or statutory standing, and yet the court said Article III standing. In the Lone Star case, the allegation in the case, and the District Court seized on this, was that the plaintiff in that case said they were a patentee and didn't allege they had exclusionary rights. But in the Lone Star case, this court said, well, close enough. They have exclusionary rights, and that's good enough for Article III standing, even though the principal basis they argued below was as a patentee. You just can't... And you don't think 370 is close enough on their side? I don't think it does because I think it's an example of where the difference between constitutional and statutory arguments have big differences. Because when they're raising a constitutional argument in hot verba, constitutional standing, our reaction to that on the eve of trial is, nothing we can do about it, and it's the kind of issue you can raise at any time in the case so there's no problem with kicking it to after the trial. Whereas if it's statutory, we would be saying, let's fix it, let's address it so we can fix it, and we would also be saying, and it's got to be preserved at trial. The rules say that. If I just get my two other reasons, I mean, you can't forfeit... Yeah, I know. You can't forfeit this kind of argument at all, but equally importantly, we didn't... Like, this is just an argument. I mean, the city of Escondido, the parties below only raised a physical taking argument, and yet the Supreme Court allowed them to raise a regulatory taking argument. This is far less aggressive. We made one argument for why we have Article III standing. We'd like to make a second one. And the last point is, we did timely raise this. The sequence of this is important. Judge Stark first dismissed this as a party. He then asked for supplemental briefing on the effects of that order and whether it required a new trial. And that's the point at which we said, before he'd ordered a new trial, we said, wait a second. You're wrong. This is only statutory. It's not constitutional. In the footnote that my friend averted to, we said, it's just statutory and we can fix it. And we also said, it's just statutory and so you don't need a new trial. And he said, I disagree. You're wrong. It's just constitutional. I'm going to order a new trial. That should be fixed. Thank you. Thanks to both counsel. Case is submitted.